1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7   SOFIA VELADORES, et al,                    Case No. 2:17-cv-00062-RFB-VCF

8              Plaintiffs,                                      ORDER

9        v.

10  LAS VEGAS METROPOLITAN POLICE
    DEPARTMENT, et al,

11

12             Defendants.

13

14       **I.       INTRODUCTION**

15          Before the Court is Defendants Las Vegas Metropolitan Police Department ("LVMPD")

16  and Officer Solon McGill's Motion for Summary Judgment (ECF No. 33).

17

18       **II.      PROCEDURAL BACKGROUND**

19           Defendants removed this action to this Court on January 6, 2017 after Plaintiffs filed the

20  complaint in state court on November 23, 2016. ECF Nos. 1, 1-1 at 3. Plaintiffs assert violations

21  of the Fourth and Fourteenth Amendment against Defendant McGill under 42 U.S.C. § 1983, a

22  Monell claim against LVMPD, and assault and battery against all defendants. ECF No. 1-1 at 8-

23  12.  Defendants filed the instant Motion for Summary Judgment on March 11, 2019, Plaintiffs

24  responded on May 23, 2019, and Defendants replied on August 7, 2019. ECF Nos. 33, 45, 51. A

25  hearing on the motion was held on January 15, 2020. ECF No. 54.

26       **III.     FACTUAL BACKGROUND**

27          This action arises out of an officer involved shooting on the evening of December 14, 2015.

28  ECF No. 1-1 at 5.

### a.  Undisputed Facts

Defendant McGill and Officer Bryan Moore responded to a call about an armed robbery on December 14, 2015. The officers received information linking the car involved in the robbery to 3869 King Palm Avenue. Plaintiffs live at 3869 King Palm Avenue.

On the way to the King Palm residence, the officers discovered that six months prior the residents of this address had been involved in a homicide investigation.

As the officers approached the residence, they saw the car suspected in the armed robbery back into the driveway and three people emerge. Among these people was Jesus Sanchez, son of Roberto Sanchez.

Defendant McGill exited the patrol car and ordered the three individuals onto the ground.

Shortly after, Roberto Sanchez emerged from inside of the home, holding a handgun. Defendant McGill shot Roberto Sanchez multiple times. Sanchez fell back into the house, closing the door as he fell back inside. Roberto Sanchez died as a result of his gunshot wounds.

Defendant McGill fired six shots, four of which struck Roberto Sanchez. Sanchez was struck in the left arm, the left side of his torso, his stomach, and the right side of his back. Roberto Sanchez died as a result of his wounds.

Officers Moore and McGill were wearing their police uniforms and driving a marked patrol car.  The overhead lights and sirens on the patrol car were not activated. The car's headlights were on.

### b.  Disputed Facts

The parties have different characterizations of the circumstances and the force deployed by Defendant McGill against Roberto Sanchez.

According to Defendants, after Roberto Sanchez exited his residence holding the gun in a "modified low ready position," Defendant McGill ordered him to drop the weapon several times and heard Officer Moore do the same, Sanchez disregarded these orders and began to raise his weapon toward Officer Moore, who was covering the armed robbery suspects. Because he believed Officer Moore's life was in danger, Defendant McGill shot Sanchez. The duration from the time Roberto Sanchez exited the home until the time Defendant shot him was five or six seconds.

1    According to Plaintiffs, Roberto Sanchez did not know that Officer Moore and Defendant

2    McGill were police officers and did not raise his gun toward police. Plaintiffs D.S. and I.S. were

3    asleep in their room at the front of the house and were awakened by loud noises coming from the

4    front yard. D.S. looked through the window but did not see any police cars, lights suggestive of

5    police cars, or police officers. I.S. looked out the window and saw his older brother, Jesus Sanchez,

6    lying on the ground, but could not see anyone else, including police. D.S. told his father Roberto

7    that he had seen Jesus on the ground out front but did not know why. Roberto Sanchez grabbed

8    his gun and opened the door to investigate. The officers did not identify themselves as police. The

9    police officers did not issue any verbal warning in English or Spanish before the shooting started.

10   Roberto Sanchez saw his son lying on the ground in the front yard with people standing behind

11   him, but Sanchez could not see who these people were. These people did not identify themselves.

12   The lights of the police car shown toward the front of the house. The gun shots happened "two or

13   three seconds" after Roberto Sanchez opened his door.

14       The parties also characterize the "homicide" investigation that occurred at the residence

15   the previous summer differently. Defendants refer to it as a "homicide investigation" while

16   Plaintiffs call it a "home invasion." Plaintiffs claim that the police were called to the home to

17   investigate a home invasion of the residence and that no one at the residence was suspected. Two

18   people forced their way into Plaintiffs' residence, one of whom shot at Jesus Sanchez; Jesus

19   Sanchez shot both assailants, killing one. No charges were filed.

20

21   IV.   LEGAL STANDARD

22   A. Summary Judgment

23       Summary judgment is appropriate when the pleadings, depositions, answers to

24   interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

25   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

26   law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When

27   considering the propriety of summary judgment, the court views all facts and draws all inferences

28   in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789,

793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

**B.  Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014).  In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id.

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks omitted). "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." Green v. City & Cty. of San Francisco, 751 F.3d 1039, 1052 (9th Cir. 2014).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  While a case directly on point is not required in order for a right to be clearly established,

"existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 2083. Further, the right must be defined at "the appropriate level of generality ... [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000); see also al–Kidd, 131 S.Ct. at 2084. The plaintiff bears the burden of proving that the right was clearly established. Tarabochia, 766 F.3d at 1125.

In deciding a claim of qualified immunity where a genuine issue of material fact exists, the court accepts the version asserted by the non-moving party. Ellins v. City of Sierra Madre, 710 F.3d 1049, 1064 (9th Cir. 2013). Summary judgment must be denied where a genuine issue of material fact exists that prevents a finding of qualified immunity. Sandoval v. Las Vegas Metropolitan Police Dept., 756 F.3d 1154, 1160 (9th Cir. 2014).

## V.      DISCUSSION

### A.   Count I: 42 U.S.C. § 1983 against Defendant McGill

Defendant McGill seeks summary judgment as to the claim under Count I that he used excessive force in violation of the Fourth Amendment.

To make out a prima facie case under § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1989).

Whether an officer's use of force constitutes a violation of the Fourth Amendment turns upon whether the officer's conduct was reasonable under the circumstances. Jones v. Las Vegas Metro. Police Dept., 873 F.3d 1123, 1130 (9th Cir. 2017). "Reasonableness" is determined in part by a consideration of the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). "The most important factor under Graham is whether the suspect posed an immediate threat to the safety of the officers or others." Estate of Lopez by & through Lopez v. Gelhaus, 871 F.3d 998, 1005 (9th Cir. 2017) (internal quotations and citations omitted). "These factors are non-exhaustive" and courts must

"examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in Graham." Id. at 1006.

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (quoting Graham, 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id.

"An officer may reasonably use deadly force when he 'has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer[s] or to others.'" Estate of Martinez v. City of Fed. Way, 105 F. App'x 897, 898 (9th Cir. 2004) (citing Tennessee v. Garner, 471 U.S. 1, 11 (1985)).

Defendant McGill argues that he did not use excessive force. Considering the Graham factors, Defendant argues Roberto Sanchez's act of emerging from his house with a handgun, refusal to relinquish it, and raising it at the officers constituted the crime of Assault with a Deadly Weapon, which is "manifestly a serious crime," and which therefore renders his conduct "reasonable" in light of the severity of the crime at issue. ECF No. 33 at 10-11. Defendant further argues that the threat posed by Roberto Sanchez was death by lethal gunfire and that it is undisputed that Sanchez refused to drop his gun and instead raised it in the officers' direction. Id. at 12-13. Finally, Defendant argues that Sanchez was actively resisting because he refused to drop his gun, and therefore his use of force was reasonable. Id. at 13.

In opposition, Plaintiffs argue that in addition to Graham, Pauly v. White, 814 F.3d 1060 (10th Cir. 2016) is applicable, and assert that courts when assessing the "degree of threat" faced by the officer must consider non-exclusive factors including: "1) whether the officers ordered the suspect to drop his weapon and the suspect's compliance with commands; 2) whether any hostile motions were made with the weapon toward the officers; 3) the distance separating the officers and the suspect; and 4) the manifest intentions of the suspect." Pauly, 814 F.3d at 1076, judgment vacated, White v. Pauly, 137 S.Ct. 548 (2017)).   In assessing the degree of threat faced by Defendant McGill, Plaintiffs properly assert that the Court should conduct its analysis assuming

/ / /

disputed facts in the Plaintiffs' favor to determine whether, if accepted, they would establish a potential constitutional violation.

The Courts considers the factors identified in <u>Graham</u> and <u>Pauly</u> to the facts of this case. Considering the disputed facts in this light, the Court finds that the factor regarding warnings given to the deceased fall squarely in Plaintiffs' favor, as the Court assumes just for the analysis here that McGill did not issue any warnings and that neither McGill nor Moore identified themselves as police officers or activated their overhead lights or sirens in a manner that would have shown their presence. And the police did not and thus Sanchez could not resist commands to drop or put away his weapon. Additionally, Defendant McGill did not attempt to communicate with Sanchez in Spanish, despite being earlier advised by Officer Young that it would be the "best course of action" to do so. Additionally, because Defendant McGill opened fire within seconds after Roberto stepped outside, he did not have time to comply with commands even if they had been given.

As for other "degree of threat" factors, the Court assumes, based on Plaintiffs' assertions, that Roberto Sanchez never raised his gun in a threatening manner before being shot multiple times. Sanchez therefore did not make any "hostile motions" "with the weapon toward the officers." <u>Id.</u> at 18-19. The Court considers the fact that the distance between Sanchez and the officers was at least forty to fifty feet. More importantly, the Court takes note of the fact that Sanchez did not attempt to approach the officers or move towards them in an aggressive manner. He simply stood in the doorway of his own home with a firearm at his side. These facts also clearly favor Plaintiffs.

Additionally, the Court's consideration of the "manifest intentions of the suspect" falls in favor of Plaintiffs. Sanchez did not exhibit any behavior or conduct which would suggest hostile or aggressive or lethal intentions. Quite the contrary, he opened the door to his own home and stood in the doorway. He was investigating an objectively loud disturbance in his front yard. He had been told that his son may be under some form of duress and possibly assault. He then took his firearm and opened the door. He did have firearm in his hand, but he did so in a state which has open carry laws and which permits individuals to defend their homes with firearms if necessary. He never raised his firearm.

The Court finds that in terms of the most crucial factor for the reasonableness of lethal force identified in <u>Graham</u>, whether the victim posed a threat to the officers or anyone else, the disputed facts here demonstrate a constitutional violation occurred. As non-movants, Plaintiffs have met their burden of setting forth disputed facts that, if proven true, would establish a constitutional violation. Assuming Plaintiffs' asserted facts, the officers approached the front of the Sanchez home without identifying themselves and without others being able to see their marked car or their individual uniforms. The officers were making loud noises out in front of a home where they knew that inhabitants had previously had to defend themselves against an armed intrusion. When officers saw Roberto Sanchez open the door with a gun in his hand, they knew he spoke Spanish but did not attempt to address him in Spanish or English. They knew their headlights were in his face so he would not be able to identify or see them as police officers. They did not identify themselves as police officers. He did not advance on the officers but within seconds of seeing a gun McGill opened fire without warning. Sanchez had committed no crime when he was fired upon by Defendant McGill, he did not raise his gun at all and he was lawfully permitted to possess his weapon and defend himself. Sanchez did not exhibit any threatening gestures or words towards the officers. Sanchez did nothing to indicate that he was a threat or threatening to the officers or anyone else. Under such circumstances, it would be objectively unreasonable for an officer to use deadly force against Sanchez.

The Court rejects Defendant McGill's suggestion that it is appropriate for this Court to resolve factual disputes between the parties. The Court cannot give preference to facts asserted by so-called impartial bystanders nor can the Court rely upon alleged contradictions or inconsistencies between Plaintiffs' witnesses to discredit or disregard Plaintiffs' evidence of disputed facts.

### B.  Qualified Immunity

Defendant McGill further argues that he is entitled to qualified immunity because his actions were reasonable in light of the threat posed by Roberto Sanchez and he did not therefore violate the Fourth Amendment in using deadly force. Further, he did not violate any clearly established law. He acted as a reasonable officer given what he knew at the time of the shooting,

including the information that the residence at issue had been the subject of a homicide investigation. ECF No. 33 at 20. He did not knowingly violate clearly established law. Plaintiff counters that Defendant McGill's actions constituted a violation of Roberto Sanchez's clearly established Fourth Amendment rights and that he is not therefore entitled to qualified immunity.

In deciding whether Defendant may assert qualified immunity, as there exists a genuine dispute of material fact, the Court accepts Plaintiffs' version of events as the non-moving party. Plaintiffs have met the first prong of qualified immunity by showing that Defendant's conduct as described above violated a constitutional right. Again, based on Plaintiffs' assertions, Defendant McGill violated Roberto Sanchez's Fourth Amendment right by using unjustified lethal force against him when he posed no threat to the officers as he did not raise his gun or make any threatening movements or gestures, when the officers gave no warning before shooting Sanchez and when the officers would have known that he was legally justified in appearing at the door of his home with a gun to defend his family and his home.

As for the second prong of the qualified immunity inquiry, Plaintiffs have also met their burden in showing that Defendant violated a clearly established right. It has been clearly established in this Circuit for over twenty years that "[l]aw enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed." Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997) (citing cases). It is also clearly established that officers must give a warning where possible prior to using lethal force. Id. It is evident that it would be clear to a reasonable officer that shooting a man who posed no immediate threat but merely opened his front door to investigate as to why his son was laying, apparently unwillingly, on the ground outside of his home is unlawful conduct. Roberto Sanchez was in his own home and was a lawful gun owner. According to Plaintiffs' version of the facts, Roberto Sanchez opened his front door and was shot down unprovoked by Defendant McGill almost instantaneously and without warning.

In Estate of Lopez by & through Lopez v. Gelhaus, 871 F.3d 998, 1018 (9th Cir. 2017), the Ninth Circuit examined three cases as clearly established law, one of which with facts exceptionally similar to those at issue here. In George v. George, 736 F.3d 829 (9th Cir. 2013),

officers encountered a man they believed to be suicidal on the second-floor balcony of his own home, holding a gun. George, 736 F.3d at 832. The man was holding the gun in his left hand, with the barrel pointing down. Id.  An officer then testified that the man then "turn[ed] straight east and raise[d] [the gun]" and "point[ed] it directly at [him]," prompting the officer to fire.  Id. at 833 n.4. The Court assumed the man did not take other "objectively threatening" action and credited Plaintiff's version of events. Id. at 838. The Court then stated:

> Given [Plaintiff's] version of events, a reasonable fact-finder could conclude that the deputies' use of force was constitutionally excessive. Contrary to the dissent's charge, we are clear-eyed about the potentially volatile and dangerous situation these deputies confronted. Yet, we cannot say they assuredly stayed within constitutional bounds without knowing '[w]hat happened at the rear of the George residence during the time Mr. George walked out into the open on his patio and the fatal shot.' That is, indeed, 'the core issue in this case.'

Id. at 838-39.

Here, as in George, Defendant McGill faced a man who had emerged from his own home holding a firearm at his side, and here, as in George, Plaintiffs' version of events dispute Defendant's assertion that Roberto Sanchez was raising the gun, and further indicate that Roberto Sanchez did not engage in "objectively threatening" actions. Finally, here, as in George, the "core issue" is what happened during the time Roberto Sanchez walked out onto his front porch and Defendant McGill's use of force. As the facts are disputed not only as to whether Roberto Sanchez raised his gun, but as to whether any warning was given and whether the officers identified themselves, the Court "cannot say [Defendant McGill] assuredly stayed within constitutional bounds." Id.

Accordingly, the Court denies Defendant McGill's Motion for Summary Judgment as to the Fourth Amendment claim under Count I.

### C.  Count II: 42 U.S.C. § 1983 against LVMPD

Defendant seeks summary judgment on Plaintiffs' Monell claims.

1       When a municipal policy of some nature is the "driving force" behind an unconstitutional

2   action taken by municipal employees, the municipality will be liable. Monell v. Dep't of Social

3   Services, 436 U.S. 658 (1978). Liability exists where the unconstitutional action "implements or

4   executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated"

5   by municipal officers, or where the constitutional deprivation is visited pursuant to governmental

6   "custom." Id. Plaintiffs can recover under three different theories: "commission," a local

7   government implementing its official policies or established customs, such as inadequate training

8   of governmental officials; "omission," the government's omission to an official policy, such as a

9   failure to train; or "ratification," a policymaker's purposeful approval of an employee's

10  unconstitutional conduct. Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1249–50 (9th Cir.

11  2010).

12      Defendant argues Plaintiffs' Monell claims mandate that the alleged deprivation come

13  directly from a plan or policy of the state, municipality, or political subdivision, and they cannot

14  recover under this theory without proof that some extant policy, custom, or practice caused a

15  constitutional violation, yet have presented no evidence against Defendant LVMPD that such a

16  policy, custom, or practice existed. ECF No. 3 at 14. Plaintiffs do not oppose Defendants' Motion

17  for Summary Judgment as to the Monell-based claims.

18      Therefore, as Plaintiffs provide no opposition to Defendant's motion, the Court dismisses

19  this claim without prejudice.

20

21  **D.  Count III: Assault and Battery against Defendant McGill[1]**

22  Defendant McGill seeks summary judgment on Plaintiffs' assault and battery claim,

23

24  _____

25      [1] The complaint asserts this claim against "all" defendants but Plaintiffs' opposition to the
    instant motion asserts the claim only against Defendant McGill. See ECF No. 45 at 26. Further,

26  Defendants only make an argument regarding this claim in defense of Defendant McGill. Given
    that it is not otherwise possible to make claims of assault and battery against an entity, as opposed

27  to a natural person, and in light of the parties' representations, the Court considers this claim as
    asserted solely against Defendant McGill. To the extent it was intended to be asserted against

28  LVMPD, the claim is dismissed as to that defendant.

1  arguing that he is entitled to statutory immunity, or in the alternative, that his use of force was

2  reasonable and therefore does not constitute battery.

3       "To establish a battery claim, a plaintiff must show that the actor (1) intended to cause

4  harmful or offensive contact, and (2) such contact did occur." Switzer v. Rivera, 174 F. Supp. 2d

5  1097, 1109 (D. Nev. 2001) (citing Restatement (Second) of Torts, § § 13, 18 (1965)).

6       To establish an assault claim, a plaintiff must show that the actor intended to cause a

7  harmful or offensive contact or imminent fear of such a contact, and the plaintiff was thereby in

8  fear of such imminent contact. Restatement (Second) of Torts, § 21 (1965). An actor without this

9  intent is not liable for assault. Id.

10      The Court finds, based upon the same disputed facts underlying the Fourth Amendment

11 claim, that there is a genuine issue of disputed fact as to this claim. This does not, however, end

12 the inquiry as the Court must consider the potential application of immunity to Defendant McGill.

13      NRS 41.032 provides: "Except as provided in NRS 278.0233 no action may be brought

14 under NRS 41.031 or against an immune contractor or an officer or employee of the State or any

15 of its agencies or political subdivisions which is ... (2) Based upon the exercise or performance or

16 the failure to exercise or perform a discretionary function or duty on the part of the State or any of

17 its agencies or political subdivisions or of any officer, employee or immune contractor of any of

18 these, whether or not the discretion involved is abused." The Nevada Supreme Court has held that

19 "[p]ersonal deliberation, decision and judgment are requirements of a discretionary act.... Such a

20 decision should not be second guessed by a court with the benefit of hindsight." Parker v. Mineral

21 Cty., 729 P.2d 491, 493 (Nev. 1986) (citations omitted). To determine whether an action of a state

22 officer falls within the scope of NRS Section 41.032(2), a court must consider whether the action

23 "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations

24 of social, economic, or political policy." Martinez v. Maruszczak, 168 P.3d 720, 729 (Nev. 2007).

25      As to discretionary immunity, Defendant argues an officer's decision as to how to

26 accomplish a particular search or seizure is considered a discretionary act under Nevada law and

27 no reasonable jury could conclude that Defendant McGill's decisions constituted deliberate and

28 willful disregard for the law or were motivated by malice or animosity. Defendant McGill

reasonably perceived Sanchez's action as a threat to officer safety and responded by shooting him. ECF No. 33 at 23. Plaintiffs counter that holding Defendant liable for Roberto Sanchez's wrongful death would not usurp legislative authority and that because Plaintiffs do not seek to re-define the law but hold Defendant accountable within it, Defendant McGill fails to satisfy the criteria required to earn discretionary immunity. ECF No. 45 at 25-26.

In the alternative, Defendant argues Plaintiffs' claim fails as a matter of law because Plaintiffs cannot make a prima facie case for battery, given that Defendant's use of force was reasonable and therefore lawful. ECF No. 33 at 23. Plaintiffs counter that the viability of this claim depends in part on the Court's treatment of the federal claims and that the facts clearly indicate Defendant McGill engaged in intentional, unlawful, and fatally harmful contact with Roberto Sanchez. ECF No. 45 at 26. This conduct was not justified or objectively reasonable and his tortious actions resulted in Roberto's premature and avoidable death. Id.

The Court finds that discretionary-function immunity does not apply to Defendant McGill under these circumstances. The judgment subject to that defense must be "based on considerations of social, economic, or political policy." See Neal-Lomax v. Las Vegas Metro. Police Dep't., 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008), aff'd, 371 F. App'x 752 (9th Cir. 2010). Based upon Plaintiffs' assertion of facts, the decision to use deadly force against Roberto Sanchez was not based on these considerations.

Regarding the battery and assault claims themselves, the Court has already determined that there is a genuine dispute as to whether Defendant's contact with Plaintiff was intended and harmful, for the reasons discussed supra, as to the Fourth Amendment claim under Count I. The Court therefore denies summary judgment in favor of Defendant McGill on the assault and battery claim.

### E.  Punitive Damages

Defendant seeks summary judgment on Plaintiffs' prayer for punitive damages.

NRS 42.005 permits an award of punitive damages "in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the

1    defendant has been guilty of oppression, fraud or malice, express or implied . . . ."

2          Both compensatory and punitive damages are available under 42 U.S.C. § 1983. <u>Smith v.</u>

3    <u>Wade</u>, 461 U.S. 30, 56 (1983). Punitive damages may be assessed under § 1983 when a defendant's

4    conduct is shown to be motivated by evil motive or intent, or if it involves reckless or callous

5    indifference to the federally protected rights of others. <u>Id.</u>

6          Defendant McGill argues there is no evidence that his actions were motivated by an evil

7    motive. ECF No. 55 at 25. Defendant responded with deadly force only when Roberto Sanchez

8    raised his weapon past waist level, and based upon these "undisputed facts," no reasonable jury

9    could conclude his actions were driven by evil motive or intent. <u>Id.</u> Plaintiffs do not oppose

10   Defendants' Motion for Summary Judgment as to punitive damages.

11         Accordingly, as Plaintiff's provide no opposition to Defendant's motion, the Court

12   dismisses the prayer for punitive damages without prejudice.

13

14         **VI.      CONCLUSION**

15         **IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (ECF

16   No. 33) is DENIED in part and GRANTED in part. The second claim asserted against LVMPD

17   and Plaintiffs' prayer for punitive damages are DISMISSED. The Motion is DENIED as to the

18   first and third claims asserted against Defendant McGill.

19         **IT IS FURTHER ORDERED** that Defendant LVMPD is DISMISSED from this action.

20

21         DATED: <u>May 31, 2020</u>.

22                                                            _____

23                                                            **RICHARD F. BOULWARE, II**

24                                                            **UNITED STATES DISTRICT JUDGE**

25

26

27

28

                                                14